Verbon McKinney Murphy was indicted for assault in the second degree in violation of § 13A-6-21, Code of Alabama 1975. The jury found the appellant "guilty as charged in the indictment" and the trial judge sentenced him to 20 years' imprisonment in the penitentiary as a habitual felony offender.
Elsie Smith, the appellant's mother, testified that on August 26, 1984, she lived at 506 Henderson Street in Gadsden. The appellant lived in a small building behind her house and he usually ate with her each day.
At approximately 2:00 on the afternoon of August 26, 1984, Smith saw the appellant outside and asked him if he was ready to eat. The appellant told her he would eat later. Shortly, he came into the house and began "grumbling." Smith asked him if he found what she had cooked.
All of a sudden, the appellant looked "viperous" at her and began shaking his fist. The appellant then poured hot coffee on her feet. The appellant grabbed Smith by the arm, threw her against the kitchen cabinet and began hitting her with his fist.
The phone rang and Smith answered it. The appellant grabbed the receiver out of her hand and began hitting her with it. Smith passed out and, when she came to, she begged the appellant to leave the house. He replied that he would leave when she gave him $50,000. The appellant then left.
Soon, the police and paramedics arrived. Smith eventually was admitted into the coronary care unit of Baptist Hospital in Gadsden, where she stayed for approximately three weeks. During her stay in the hospital, *Page 773 
Smith received a pacemaker and is now confined to a wheelchair.
Dr. Ronald Hanson, a cardiologist, stated that he did a cardiac evaluation of Smith on August 26, 1984. His examination revealed that Smith was possibly having a heart attack and could have died at any moment. Hanson saw evidence of faint bruises which he believed could have been caused by trauma such as a beating.
In his opinion, Hanson testified that the cardiac events suffered by Smith on August 26 were caused by her underlying heart problems coupled with the alleged beating.
The appellant testified that, at 2:00 p.m. on the day in question, he went to his mother's house to check on her. Smith asked him if he wanted something to eat and he replied that he had already eaten. The appellant stated that sometimes his mother has "spells" and starts fussing with him. When this happens, he usually walks off.
On this particular day, Smith began fussing at the appellant. The appellant managed to get her to sit down and he left. A short time later the police arrived.
 I
During trial, Dr. Hanson testified as to Smith's medical history. The appellant objected to this testimony as hearsay. He now contends on appeal that this testimony was erroneously admitted into evidence. We disagree.
 "The expert opinion testimony of a physician-witness as to the condition, diagnosis, prognosis or otherwise of his patient, whom he has personally examined, may be based in part on the history of the case, including both his present and past condition and symptoms as related by the patient to the physician-witness in connection with, and as part of, the examination. The physician, for the purpose of showing the basis of his opinion, may testify to the patient's statements to him concerning the history of the case. One of the better statements of this principle came in the decision of State Realty Company v. Ligon [218 Ala. 541, 119 So. 672 (1929)] in which the Supreme Court stated:
 `In the practice of medicine, a diagnosis of the ailment may include a personal examination of the patient by all methods known to science . . . and also the history of the case, as given by the patient . . . This history may include a statement of present and past symptoms, the incidents connected with the beginning of trouble, such as injury by accident. . . . A professional opinion as to the nature, cause and extent of the ailment based upon all those matters in connection with and as part of the personal examination of the patient is competent evidence. Necessarily the information coming to the physician may be largely hearsay. An exception is made because of the necessities of medical science, because the patient's statements are presumed to be made to aid in a correct diagnosis and cure . . .'"
C. Gamble, McElroy's Alabama Evidence, § 110.01 (1) (3rd ed. 1977). (Footnotes omitted.) See Gullatt v. State, 409 So.2d 466
(Ala.Crim.App. 1981); Frazier v. State, 366 So.2d 360
(Ala.Crim.App. 1978); Newman Brothers v. McDowell,354 So.2d 1138 (Ala.Civ.App. 1977); Humphries v. State, 39 Ala. App. 316,98 So.2d 625 (1957).
Therefore, we hold Dr. Hanson's testimony was properly admitted into evidence as the medical history of Smith over the objection that his testimony constituted hearsay.
 II
On direct examination, the appellant admitted that he had been convicted of Grand Larceny and Buying, Receiving and Concealing Stolen Property.[1] During the court's oral charge to the jury, the trial judge stated: *Page 774 
 "The credibility of a witness may be attacked by introducing evidence that the witness has been convicted of a crime involving moral turpitude. Evidence has been introduced that Verbon Murphy has been convicted of a crime involving moral turpitude and if you are reasonably satisfied from the evidence that the witness, Verbon Murphy, has been convicted of a crime involving moral turpitude, such evidence goes to the credibility of this witness and you may consider it along with all the other evidence in determining what weight you will give to his testimony." (R. 40).
At the conclusion of the court's oral charge, defense counsel made the following objection:
 "MR ALLSUP: Your Honor, I would except to the Court's charge on impeachment by conviction of a crime of moral turpitude of the Defendant." (R. 42).
We do not find reversible error in the trial court's above-quoted charge for two reasons. First, the appellant's objection to the charge did not specify the grounds of his objection as required by Rule 14, Alabama Temporary Rules of Criminal Procedure.
Secondly, whenever evidence is introduced that a witness has been convicted of a crime involving moral turpitude, the credibility of that witness has been affected. This is true whether the witness admits this information on direct examination or whether it is elicited by the opposing party during cross-examination.
Since evidence that a witness has been convicted of a crime involving moral turpitude may damage the credibility of that witness, a jury charge on that subject is proper.
Therefore, we find no basis of error on this issue.
 III
During the Habitual Felony Offender hearing, the State offered into evidence certified copies of two prior felony convictions of this appellant. Defense counsel objected to the admission into evidence of these prior convictions on the ground that the State had failed to prove that the appellant had been represented by counsel in these two cases.
The trial judge then allowed the State to call the appellant to the stand and the appellant testified that he had been represented by an attorney in both cases. The appellant now contends this action violated the appellant's Fifth Amendment right against self-incrimination.
This court must reject this argument for three reasons. First, defense counsel never objected to the appellant taking the stand and testifying. Therefore, nothing is preserved for our review.
Secondly, Rule 6 (b)(3)(iii) Alabama Temporary Rules of Criminal Procedure (which pertains to Habitual Felony Offenders) provides that the State or the trial judge may examine the appellant under oath at the habitual offender hearing concerning any relevant matters. See Crittenden v.State, 414 So.2d 476 (Ala.Crim.App. 1982).
Thirdly, since the appellant admitted the two prior convictions during trial, the State was relieved of proving he was represented by counsel on both of these convictions. Nilsonv. State, 412 So.2d 1262 (Ala.Crim.App. 1982).
For the reasons stated above, this cause is due to be and is hereby affirmed.
AFFIRMED.
All the Judges concur.
[1] Grand Larceny and Buying, Receiving and Concealing Property are both crimes which have been found to involve moral turpitude. See Orr v. State, 225 Ala. 642, 144 So. 867 (1932);Ragland v. State, 238 Ala. 587, 192 So. 498 (1939). *Page 775